### STATE v. ROSS.

1. CHARGE with reference to maintaining a nuisance by keeping a place for manufacture, &c., of liquors in propounding certain questions to jury, held not prejudicial error, because such facts seemed not to be disputed, and all inferences were left for jury.

2. IBID.—WORDS AND PHRASES.—Using the words *"is to be,"* with reference to place where liquors are manufactured, in charge, construed to mean after the enactments of the law.

Before WATTS, J., Spartanburg. Affirmed.

Indictment against Joseph Ross for violation of dispensary law. From judgment on verdict of guilty, defendant appeals.

*Mr. R. K. Carson,* for appellant.

*Solicitor T. S. Sease,* contra.

Aug. 7, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. The record contains the following statement of facts: "The appellant, Joseph Ross, and one James Ballard, were indicted jointly for violation of the dispensary law. The indictment contained two counts. The first charged the sale of contraband liquor; the second count in the indictment, omitting the formal parts, was as follows: 'Did wilfully and unlawfully keep and maintain a place where alcoholic liquors were sold, bartered and given away, and where persons were permitted to resort for the purpose of drinking alcoholic liquors as a beverage, and where alcoholic liquors were kept for sale, barter and delivery, and where alcoholic liquors were manufactured, thereby then and there keeping and maintaining a common nuisance, against the form of the statute.' " Two witnesses testified in behalf of the State as to sales made to them by the defendant, Ross, at his dwelling. One of the said witnesses tesitified as follows: "Q. Do you know the defendants, Ross and Ballard?

A. Yes, I saw then that morning when we went up there; it was one morning in August—I don't remember what morning it was. Q. Tell us about all you saw that morning. A. I went up there in the night and found the still-place with some eight or nine stands of beer—I think it was eight or nine stands—and we went back up on the hill and lay there until daylight. Somebody came past about daylight and went on down towards the still, and we went on down there. We got there. We saw there wasn't anybody there at that time; but Mr. Howie and myself hid by the branch and Mr. Floyd went down that branch, and it wasn't long until Mr. Ross and Mr. Ballard came. One of them had an axe on his shoulder, and the other a barrel, or keg rather. One of them, my recollection is, went to making up some mud, and the other to cleaning out an old furnace, and we closed in on them and arrested them, cut down the stands of beer, and brought them on to Spartanburg. Q. Do you know anything about the process of distilling liquor? A. No, sir, nothing only what I have learned since I have been a State constable. Q. In what stage of manufacture is it when you have got the beer there? A. They say when it gets real sour, it is ready for making. Q. How far is that from the defendant's, Ross', dwelling house? A. It is, I suppose, two or three hundred yards." The other witness testified to having taken a still out of an old house fifty or seventy yards away from the still-house where defendants were arrested. After his Honor had charged the jury, the record shows that the following took place: *"Mr. Carson:* Will you let me state my request to charge? I stated it, but your Honor did not charge it. *By the Court:* You ought to have handed it up beforehand. *Mr. Carson:* My request was this, that in order to convict the defendants of maintaining a place where liquor was manufactured, the State must prove beyond a reasonable doubt that the liquor was manufactured there. *By the Court:* I charge you that, gentlemen. If you have any doubt in your minds, under the testimony in the case, that this was a place where liquor was manufactured, why

then acquit the defendants; but if you take all the facts and circumstances surrounding the case, and they satisfy you beyond a reasonable doubt that it was the place where the liquor was manufactured, then your verdict, if you think they are guilty, should be guilty. As I told you before, the facts and circumstances are entirely for you. If the necessary paraphernalia was there to make liquor, and you think those parties were the parties that had it there, and they were engaged in this business, then you can convict them. If you think there was sour mash there and low middlings and things of that sort, it is for you to say what they were there for, whether to make liquor or what. That is for you." The jury found the defendant, Ross, guilty on both counts of the indictment, and he was sentenced to pay a fine of $250 or to labor for nine months on the public works of the county.

The defendant appealed upon the following exceptions: "Because it is respectfully submitted that the presiding Judge erred in charging the jury as follows: '1. It is for you to say whether or not, under the circumstances of this case, these parties were manufacturers of liquor. 2. Was the paraphernalia there to make liquor? If you are satisfied in this case that at this place was the paraphernalia to make liquor, and satisfied under the testimony as to what the process for making liquor is, and satisfied that the defendants were engaged in the manufacture of it, then you can find them guilty.' 3. In that he charged upon the facts in charging the jury as set out in exception 2 above. 4. Because his Honor charged upon the facts in charging the jury as follows: 'If the necessary paraphernalia was there to make liquor, and you think these parties were the parties that had it there, and they were engaged in this business, then you can convict them.' 'If you think there was sour mash there and low middlings and things of that sort, it is for you to say what they were there for, whether to make liquor or not.' 5. In charging that it was for the jury to determine the purpose to which the defendants intended to put the sour mash

and low middling found on the premises. 6. His Honor erred in charging the jury, as set out in exceptions 2 and 4, in that he made direct reference to the testimony, and stated to the jury from what testimony they could draw inferences as to the guilt of the defendants. 7. His Honor erred in charging the jury as follows: "The law also says that no man shall keep a place where liquor *is to be* manufactured, bartered, exchanged or given away.'"

The first exception is too general; but waiving this objection, it cannot be sustained, as it cannot be contended for a moment that the Court could determine whether the parties were manufacturers of liquors.

The second exception fails to specify any particular error; but waiving this objection, it cannot be sustained, as all questions of fact were properly left to the consideration of the jury.

The third exception cannot be sustained, as the question propounded by the presiding Judge was in no respect prejudicial to the appellant, and all questions of fact were left to be determined by the jury.

The fourth exception cannot be sustained, for the presiding Judge left to the jury the inference to be drawn from facts about which there seemed to be no dispute, as the appellant offered no testimony, but also whether such facts existed. While a Circuit Judge may commit error of law in asking if certain facts existed, there is no prejudicial error in this case.

The fifth exception cannot be sustained for reasons hereinbefore mentioned.

The same can be said of the sixth exception.

The seventh exception must be overruled, as the presiding Judge, in using the words "is to be," evidently meant after the enactment of the law under which the appellant was indicted.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.